UNITED STATES of America,
Plaintiff–Appellee,

v.

Kevin P. JUDGE, Defendant–Appellant.

No. 87–1071.

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1989.

Rehearing and Rehearing En Banc
Denied Feb. 21, 1989.

Lawrence J. Vilardo, Buffalo, N.Y., for
defendant-appellant.

Frederick M. Schattman, Asst. U.S.
Atty., Marvin Collins, U.S. Atty., Fort
Worth, Tex., for plaintiff-appellee.

Before GARZA, HIGGINBOTHAM
and SMITH, Circuit Judges.

GARZA, Circuit Judge:

Kevin P. Judge appealed to this court his
conviction for distributing, traveling in in-
terstate commerce to distribute, and con-
spiring to distribute a controlled substance,
and we remanded the case to the District
Court to make additional findings. *U.S. v.
Judge*, 846 F.2d 274 (5th Cir.1988). Specifi-
cally, we asked the District Court to consid-
er the question of whether Drug Enforce-
ment Administration ("DEA") agents were
acting pursuant to standard procedures
when they conducted an inventory search
of Judge's automobile and opened a closed
backpack inside the automobile containing
$65,000. Under the Supreme Court's deci-
sion in *Colorado v. Bertine*, 479 U.S. 367,
107 S.Ct. 738, 93 L.Ed.2d 739 (1987), police
may open closed containers in an inventory
search of an automobile only if they are
following standard procedures that man-
date the opening of such containers in ev-
ery impounded vehicle.

The $65,000 found in the backpack was
admitted into evidence in Judge's trial.
Judge appeals the admission of the $65,000
as fruits of an allegedly illegal search. We
have previously heard argument from both
sides in this appeal, and we remanded the
case to the District Court for the limited
purpose of determining whether the search
of Judge's bag was done according to stan-
dard procedures as mandated by *Bertine*.
The District Court has completed its find-
ings, and we are now in a position to decide
the merits of Judges' appeal.

In *Bertine*, the Supreme Court reiterated
its position that an inventory search may
be reasonable under the Fourth Amend-
ment even though not conducted pursuant
to a search warrant. An inventory of an
automobile's contents protects the owner's
personal property while it is in police custo-

dy, and reciprocally protects the police against unfounded claims of lost, stolen, or damaged property. It also can protect the police against dangerous instrumentalities, such as a bomb, in the arrestee's possession. See *Bertine,* 479 U.S. at 367, 107 S.Ct. at 738, 93 L.Ed.2d at 739. *See also South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).

Before beginning our analysis, it is important that we define the terminology that will be used and more precisely present the factual background. When Judge was arrested, his vehicle was *seized* because DEA agents had probable cause to believe it was used to facilitate the sale of controlled substances. Under the Controlled Substances Act, any conveyance so used is subject to forfeiture to the U.S. Government. 21 U.S.C.A. § 881(a)(4) (West's 1981). Thus, Judge's vehicle was seized because it was subject to forfeiture to the United States; however, Judge's bag in the car's trunk was not part of the conveyance. The agents took Judge's bag and other personal belongings in the car for *custodial safekeeping,* even though there was not probable cause to believe they were subject to forfeiture. Only *after* opening the bag and discovering a large sum of money was there probable cause to believe the money was drug proceeds and therefore forfeitable under 21 U.S.C.A. § 881(a)(6). We therefore must focus our inquiry on the agents' decision to open the closed bag under the guidelines contained in *Bertine,* which is applicable to inventory searches done for the purpose of custodial safekeeping.[1]

■ In this case, the District Court found that once a container is taken into custody, standard DEA procedures mandate that the container be opened and its contents inventoried. However, there are still two discretionary decisions inherent in the above determination. First, an agent must decide whether an object constitutes a "container." Second, an agent must decide whether or not to take the container into custody. Both these areas of discretion will now be analyzed in light of *Bertine.*

The determination of what constitutes a container is inherently discretionary. Suppose, for instance, that an agent finds a shaving kit inside a car. If the agent concludes that the shaving kit is a container, he is bound to open it and inventory its contents. However, if the agent determines for some reason that the kit is not a container, he may not open it, and must list it on the inventory sheet as merely a "shaving kit." Suppose, though, that our hypothetical DEA agent decided that the kit was a container and proceeded to open it, discovering inside among other articles a can of shaving cream and a tube of toothpaste. Is the can of shaving cream a container subject to being opened for an inventory? What about the tube of toothpaste? It all depends on the meaning the DEA agent accords to the word "container," which involves an exercise of discretion. Therefore, as a practical matter, the exercise of some discretion by agents, even if only interpretive, is inevitable since no manual can reasonably be expected to spell out in detail the correct action in light of the almost infinite array of objects an agent may encounter.

Here we should note that *Bertine* does not condemn all forms of police discretion, but only "evidentiary" discretion which is exercised on the basis of suspicion of crimi-

1. Defendant argues that DEA regulations, which state that all items *not having evidentiary value* will be returned to their owner (or presumably maintained in custodial safekeeping if the owner is under arrest), vest DEA agents with impermissible discretion under the *Bertine* test since they must decide if an item has evidentiary value. This argument fails because *Bertine* applies to decisions of whether to open containers during an inventory search. When a conveyance is seized as forfeitable, one naturally expects agents to remove from the vehicle all non-forfeitable personal property. While removing that property, it is not an impermissible use of discretion to retain any property (which, by the fact that it is being removed from the vehicle, is in the agents' plain view) that may have evidentiary value. It is impermissible, however, to decide to open a container while removing personal property from the vehicle for the sole reason of looking for evidence.

nal activity.[2] This concern, when coupled with the recognized state "administrative" interest in preserving the impounded property and protecting the personal safety of police, provides us with a benchmark from which to determine when the exercise of police discretion exceeds constitutional bounds, even though that discretion may be conferred by standard procedures. Therefore, while it is true that the DEA manual's use of the word "container" vests agents with some discretion in determining whether an object is or is not a container, this is not necessarily a fatal flaw. Rather, we must next review the way in which the agents exercised that discretion. In this task, we are guided by the policy concerns enunciated in *Bertine*. Specifically, we must ask whether the agents' actions, when viewed from an objective standpoint, can reasonably be said to have an administrative or safety motivation, as opposed to an evidentiary one.[3] Thus, an agent may decide to classify an object as a container and proceed to inventory its contents. If that object is customarily used by most people to carry valuable items, or might reasonably contain a dangerous device which threatens the personal safety of the officer, then it is more probable that officer

has stayed within the bounds of constitutional discretion. However, if an objective observer would conclude that the only legitimate purpose for opening a container found in a vehicle could have been to find evidence, the opening of the container was an illegal search. In the case at hand, we hold that the agents' decision that the bag was a container was within the bounds of administrative discretion, and was therefore permissible.

In addition to the above interpretive discretion regarding whether an object is a container, the DEA manual also confers discretion upon its agents regarding whether or not to impound an object. While it is true that once an agent takes a container into custody he must open it to inventory its contents, it is up to an agents' "prudent judgment" whether or not to take the container into custody for safekeeping in the first place. The agent has three options when confronted with personal property on an arrestee's person: 1) leave the property unattended and risk a claim against the government if it is stolen; 2) take the property into custody, or 3) allow the arrested person to designate someone to take possession of the property.[4]

---

**2.** The *Bertine* court noted that:

[n]othing in *Opperman* or *Lafayette* prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. Here, the discretion afforded the Boulder police was exercised in light of standardized criteria, related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it.

*Bertine*, 479 U.S. at 375, 107 S.Ct. at 743, 93 L.Ed.2d at 748.

**3.** The objective standard of review which we apply here to the agents' exercise of discretion is not without precedent in similar areas of the law. As the Supreme Court noted in *Delaware v. Prouse,* "the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interest against its promotion of legitimate governmental interests. Implemented in this manner, the reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against *'an objective standard'.* ..." 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979) (emphasis added). *See also Terry v.*

*Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968).

In this Circuit, among others, it is well established that determining whether an arrest is merely a pretext to search turns on an objective determination of the actions of the arresting officers, rather than a subjective determination of intent. *U.S. v. Causey,* 834 F.2d 1179, 1182 (5th Cir.1987) (en banc); *see also U.S. v. Miller,* 821 F.2d 546, 549 (11th Cir.1987); *U.S. v. Hawkins,* 811 F.2d 210, 213 (3d Cir.1987), *cert. denied* — U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 69; *Lessman v. McCormick,* 591 F.2d 605, 610 (10th Cir.1979). Clearly, the arrest in this case was not pretextual. Our discussion of pretextual arrest jurisprudence is intended to provide support by analogy for an objective standard of implementation of the *Bertine* criteria.

**4.** The DEA manual sets out the above options as follows:

*6663.63 Articles Taken Into Custody for Safekeeping ...*

A. In enforcement situations, property may be encountered on an arrestee or in a search location which is not subject to seizure, but which prudent judgment dictates should not be left unattended. Property left on the per-

Thus, we are again faced with the same issue that we dealt with above, namely, whether the discretion which arises under DEA standard procedures was used in this case in an evidentiary, as opposed to administrative fashion. Specifically, did the agents' decision to take the contents of the car into custodial safekeeping constitute an impermissible use of discretion? We hold that it did not. Judge was alone when arrested, and there was no showing that it would have even been possible to turn the property over to another.

Looking at the facts of this case from an objective standpoint, we are convinced that the DEA agents could have legitimately had an administrative purpose when they opened the bag in Judge's car. Clearly, bags of that sort are often used to carry valuable personal items or, as was the case here, sums of money. It was also large enough to contain a bomb or gun. Therefore, although the DEA manual confers a certain amount of discretion upon the agents, we are convinced that they exercised that discretion within constitutional bounds.[5]

■ Judge also argues on appeal that he was given insufficient access to the DEA manual for purposes of presenting his case on remand to the District Court. Specifically, he argues that since he was given photocopied portions of the manual two hours before the hearing on remand, he had insufficient opportunity to prepare adequately. We have viewed *in camera* the entire DEA manual, which is not subject to public disclosure, and upon comparing it with the photocopied portions provided to Judge we find that he had access to all the provisions relevant to his case. Moreover, the District Court found, and we agree, that two hours was sufficient time for Judge's counsel to read the portions of the manual with which he was provided and to formulate a strategy for representation and cross-examination.

Accordingly, the findings of the District Court on remand that the DEA inventory search of Judge's car was conducted in accordance with standard procedures, and the District Court's decision at trial to admit the $65,000 discovered during the inventory search as evidence were correct and his conviction is AFFIRMED.

son or on the premises unattended and subsequently lost could conceivably result in claims against the government. Within the following guidelines, such property should be taken into custody for safekeeping.
B. To avoid excessive processing, alternative means of securing the property should be explored, i.e., small amounts of currency and personal jewelry on a detainee could be secured and receipted for by detention center officials. Where the property belongs to a person who has been placed under arrest, request that he designate someone to take possession. Do not release any property in this manner without the written consent of the subject.
DEA manual, § 6663.63(A) & (B).

5. It would be disingenuous of us to pretend that when the agents opened Judge's bag, they weren't hoping to find some more evidence to use against him. But, they could have also reasonably had an administrative motive, which is all that is required under *Bertine*. While there are undoubtedly mixed motives in the vast majority of inventory searches, the constitution does not require and our human limitations do not allow us to peer into a police officer's "heart of hearts."