GRIFFIN, Judge.
The state appeals an order suppressing as evidence certain items identified by police in a post-arrest inventory of defendants’ personal property. We reverse.
The defendants below, Rush and Pierce, were detained at the Orlando International Airport based on a victim’s complaint of conduct that ultimately was charged as burglary, attempted kidnapping and battery. When the arresting officer arrived at the airport, he administered Miranda warnings to both Rush and Pierce, follow *473 ing which the two men made certain statements to police concerning their activities and were arrested. At the time of their arrest, they had several pieces of luggage with them. The luggage was not opened or searched at the airport but was taken by the arresting officer with the defendants to the central booking facility in Orlando. There, Corrections Officer Foster under-' took the inventory of the property of defendant Pierce while Officer Combs inventoried the property of defendant Rush. The defendants were asked which item of luggage belonged to whom and the defendants identified their respective suitcases.
The evidence adduced at the suppression hearing was that Orange County correction officers assigned to inventory property are instructed to follow certain detailed written procedures for “receiving and inventorying property.” A copy of these written procedures is a part of the record.[1] The procedure relating to property provides in pertinent part: “All luggage and/or parcels will be opened by the corrections officer, who will thoroughly inspect the contents for contraband, weapons, and valuables.”
In examining the contents of one of the suitcases belonging to Pierce, Officer Foster found a firearm clip containing ammunition. Also contained in that same piece of luggage was a locked briefcase. Pierce advised the officers that the briefcase contained weapons and agreed to open it. In the briefcase were a 45 automatic, a 9 millimeter automatic, and rounds of ammunition for the 9 millimeter.
Officer Combs testified that one of the suitcases claimed by defendant Rush contained clothes, boots, shirts, pants, socks, and other personal items. He also recalled that another of the suitcases belonging to Rush contained a pair of handcuffs, leg irons, a sting (stun) gun, and electronic surveillance equipment.
According to Orange County’s procedures, when a property intake officer finds contraband or weapons, those are turned over to the arresting officer because such items are not allowed in the facility. These items are not made a part of the jailhouse property inventory but become the responsibility of the arresting officer. Interestingly, knives are treated as personal property, not weapons, and are inventoried as part of the inmate’s personal property.
Officers Foster and Combs turned over the weapons they found to the arresting officer and then each prepared an inventory of the property items received from the defendants. The inventories, however, although somewhat detailed, did not list every item contained in the luggage. The intake procedures specify the following concerning the inventory of luggage, backpacks and blanket rolls:
Provided you open and thoroughly inspect this material for weapons, valuables, and contraband, you need not inventory the contents of a suitcase, other large parcel, backpack, or blanket roll. However, the arrestee must concur in your decision not to inventory the contents.[2]
Officer Combs testified that the property intake officers have a certain amount of discretion as to how specific the inventory should be, including such factors as the perceived value of the items and the number of items involved.
After the inventory was completed, in accordance with standard procedure, the defendants were asked to review it, to sign it, and to place their right thumb print on it. It appears the property items were then transported for safekeeping to the jail facility where the defendants were held.
Approximately one week later, Officer Sanchez, an Orange County Corrections Officer, was presented with a signed request *474 by defendant Rush to release to his attorney “two (2) black soft suitcases (luggage) and three (3) knives.”[3] Officer Sanchez prepared an inventory of every item contained in the suitcases before releasing the items to the attorney. He testified he did so because the instructions from Rush were very general, there were a lot of expensive items in the baggage, and he wanted an exact list so he would not be held responsible if “something wasn’t in there.” Sanchez testified that although “there are very little guidelines on the release of property,” it was routine for the corrections officer, upon release, to prepare an inventory of items released. Officer Sanchez explained:
[W]hen he’s processed in, if it says one black suitcase, it’s one black suitcase. But during the time it’s there and the time he leaves, items can be released from inside, which means any time something is taken out, it has to be inventoried, because it was never accountable in the first place, and anybody can say that something was missing and I would be responsible.
[[Image here]]
[A]s a precaution, when it’s released, it depends on what the items are as to whether they’re inventoried individually, all due to the fact of cost. If items were lost, they would have to be replaced.
Defendants later sought to suppress as evidence all items contained in the luggage of Rush and the weapons belonging to Pierce. The state then sought to subpoena from the attorney for Mr. Rush “all property Orange County Jail released as the property of Charles Edward Rush or Busey 0. Pierce, Jr.” The trial court entered an order ruling that the initial search was proper but that the second “inventory” of the luggage was an invalid search.[4] The order recited that the “objects in the briefcase and suitcase that were observed and logged in the latter search activities will be suppressed as evidence in this case.” We disagree that the items observed and logged in the second inventory must be suppressed.
The trial court did not make any findings or give any reasons for the conclusion that the second inventory search was impermissible but, predictably, the focus of argument has been on the absence of a “formal procedure” for conducting an inventory upon release of property. Because this admitted lack of a formal procedure tends to evoke a knee-jerk suppression reaction, we are at pains to express our reason for finding the suppressed items available for evidence.
The requirement that police conduct inventory searches in accordance with standardized criteria emerged in Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) and was recently discussed in Florida v. Wells, — U.S. -, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). In Florida v. Wells the Court explained:
Our view that standardized criteria ... or established routine, Illinois v. Lafayette, 462 U.S. 640, 648 [103 S.Ct. 2605, 2610, 77 L.Ed.2d 65] (1983), must regulate the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.
The Wells Court reemphasized that the purpose of inventory search procedures is to protect the inmate’s property, to insure against claims of lost, stolen or vandalized property, and to protect the police from danger. Accordingly, the Supreme Court held that the police need not have a uniform procedure to either open all containers or none; rather, the police may adopt other procedures. The Court expressly approved the idea of a procedure which calls for the police to open only those containers whose contents officers cannot ascertain from examining the exterior of the container. Chief Justice Rehnquist wrote for the majority that “[t]he allowance of the exer *475 cise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment.” Florida v. Wells, — U.S. at -, 110 S.Ct. at 1635, 109 L.Ed.2d at 7.
Gauged by the policy reasons for permitting inventory searches, as expressed in Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), Illinois v. Lafayette, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), and South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the property inventory procedures utilized by the Orange County corrections officers meet constitutional requirements. To begin with, in Colorado v. Bertine the key concern is for a procedure controlling whether to search a closed container, not how to document what is found in the course of the search. The quality of documentation only affects one of the policy reasons for such searches — protection of the police from invalid claims of missing inmate property. Reasonable people might differ about whether the portion of the Orange County intake and inventory procedure that allows the intake officer not to list every item contained in luggage or other large parcels is the most effective way to protect against false claims. Nevertheless, officers have to be free to exercise some judgment in deciding how lengthy and detailed an inventory will be. There is nothing to suggest that the procedure under review is designed to be an excuse for pretextual searches. United States v. Judge, 864 F.2d 1144 (5th Cir.1989), cert. denied, — U.S. -, 110 S.Ct. 1946, 109 L.Ed.2d 309 (1990). Instead, it is a rather detailed and rational procedure that generally meets the appropriate objectives.
As the trial court found, the initial inventory search required a thorough inspection of the contents of luggage. In the course of that search, the entire contents of the defendants’ luggage was made known to the police. The Supreme Court of Florida has already held, in Lightbourne v. Florida, 438 So.2d 380 (Fla.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984), that where a prisoner’s effects have been taken by police incident to a lawful arrest and “exposed to police view under lawful circumstances,” a subsequent inspection causes no greater intrusion than the original inventory. 438 So.2d at 387. Since the contents of that luggage had already properly been made known to the police, we fail to see how the second inspection and inventory made these items unavailable. There is nothing in Illinois v. Lafayette, Colorado v. Bertine or Florida v. Wells to suggest that the police only get one shot at preparing a proper inventory. If Officer Sanchez was dissatisfied with the detail of the initial inventory, we fail to see how the initial failure to list every item precludes him from subsequently correcting or improving it.
Case law dealing with the issue of inventory searches made following the owner’s request for return of personal property is limited. There is language in Illinois v. Lafayette that suggests that there is nothing wrong with an inventory made at the time of return of property:
The bare recital of these mundane realities justifies reasonable measures by police to limit these risks — either while the items are in police possession or at the time they are returned to the arrestee upon his release. Examining all the items removed from the arrestee’s person or possession and listing or inventorying them is an entirely reasonable administrative procedure, (emphasis added).
462 U.S. at 646, 103 S.Ct. at 2609-2610, 77 L.Ed.2d at 71.
In United States v. Frank, 864 F.2d 992 (3d Cir.1988), cert. denied, — U.S. -, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989), the defendant was arrested while seated in a parked rental car. The vehicle was impounded but was not searched. The defendant then requested his belongings be turned over to his family. Before release of the items, the vehicle was searched, the glove compartment and locked trunk were opened, and a zippered garment bag was found. The bag was then opened and an inventory of items prepared. Items deemed to be of investigatory value were retained and the balance were returned. It was the retained items that the defendant *476 sought to suppress. There the Court concluded that the defendant’s request to have his property returned to a third party created a situation where adoption of an ad hoc inventory search procedure was appropriate. It makes sense that the standards governing release inventories be treated differently from intake inventories, especially where, as here, the release inventory is not the first search made. When a defendant receives return of his property, by surveying it upon its return, presumably he can determine whether any item of value is missing and be expected to raise any objection at that moment. On the other hand, where property is being turned over to a third party, who is likely to be unable to identify every item or know whether some item is missing, it seems logical from an administrative standpoint that the items being turned over to this third person should be listed and the third-party recipient required to sign for them.
In the present case, Officer Sanchez testified that he had a routine of doing release inventories where the items appeared to have value and, even though no formal procedure existed, this methodology was recommended by his supervisor.. Under the circumstances, this “routine” may be enough to satisfy any requirement for a “procedure.” Certainly, the circumstances of the present case justify the use of the ad hoc approach Officer Sanchez used upon ascertaining that the intake inventory did not contain the detail he felt he needed before releasing the property to someone other than its owner.
REVERSED and REMANDED for further proceedings.
DAUKSCH and GOSHORN, JJ., concur.

. The statement of purpose contained in these procedures is as follows:
A. To establish step by step guidelines for receiving, inventorying, and securing arrestee property.
B. To insure that inventory of property is well-documented for storage and returned to an inmate.

. Both Officer Foster and Officer Combs testified that they did not seek the concurrence of the defendants at the time they elected to prepare an inventory that did not list every item contained in the luggage.

. An additional release of property belonging to Rush occurred on March 8, 1988.

. Although we agree with the trial court’s ruling concerning the initial inventory, there has been no cross appeal of this ruling by the trial court so we will not address this point directly.