**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Darren Lynn WALKER,**
**Defendant–Appellant.**

**No. 90–8395**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

May 14, 1991.

Mike Barclay, Alpine, Tex. (Court-appointed), for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before KING, GARWOOD, and DUHÉ, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Darren Walker (Walker) was convicted, after a bench trial, of possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) & 924(e)(1). Prior to his trial, Walker moved to suppress evidence of two firearms that were found in a vehicle driven by him. The district court denied his motion on the

ground that the weapons were discovered pursuant to a valid inventory search. Walker's sole claim on appeal is that the search violated his Fourth Amendment rights because its purpose was not to inventory his property, but rather to investigate his suspected involvement in a prior burglary. Finding no merit to Walker's contention, we affirm the district court's denial of the motion to suppress.

## FACTS AND PROCEEDINGS BELOW

On August 9, 1989, Sergeant Milton Horton (Horton), a Pecos police officer, observed Walker operating a motor vehicle. After confirming through his dispatcher that Walker's license was suspended, Horton followed Walker to his residence and advised him that he would be arrested if he were caught driving again under a suspended license. The next day, Horton observed Walker operating a motor vehicle without a safety belt. Walker was accompanied by a single passenger, Albert Corales (Corales).

Horton stopped Walker at a convenience store parking lot and discussed their conversation of the previous evening. Horton radioed for assistance and Peter Marquez (Marquez), a Pecos police investigator, responded to his call. While speaking with Corales, Marquez noticed two speakers in black boxes in the vehicle. They were of a type that had recently been taken in a burglary that Marquez was investigating.

Marquez asked Walker where he had obtained the speakers. Walker responded that they belonged to his brother. Marquez asked if he could look in the trunk of the car. Walker responded, "No, what for?" At this time, Horton placed Walker under arrest for driving while his license was suspended and without a safety belt. Walker fled the scene on foot and both officers pursued him after radioing for assistance. They caught and handcuffed him, returned him to Horton's patrol car,

and Horton drove him to the county jail. Meanwhile, Edward Longoria (Longoria), a Pecos police officer, had arrived on the scene. Throughout this episode, Corales remained with the vehicle.

Marquez and Longoria began to inventory the contents of the vehicle.[1] They opened the trunk and found numerous items, including a shotgun, a rifle and a stolen credit card. These three items had been stolen in the same burglary in which the speakers were taken. Because of the large number of items to be inventoried, Marquez ordered a wrecker to take the vehicle to the Pecos police department where the inventory was completed by David Montgomery (Montgomery), a Pecos police officer.

Walker was charged in a two-count indictment with possessing, as a convicted felon, two firearms which had been shipped and transported in interstate commerce in violation of U.S.C. §§ 922(g)(1) & 924(e)(1). Walker pleaded not guilty and waived his right to a jury trial. He filed a motion to suppress evidence of the weapons found in the vehicle, any other items found on his person, and all statements made by him from the time of the stop. The district court denied Walker's motion following a hearing thereon, and after trial entered a verdict of guilty on one of the two counts.[2] The court sentenced Walker to a term of imprisonment of 180 months, to be followed by a three-year term of supervised release, and ordered a $50.00 special assessment.

## DISCUSSION

Walker's only contention on appeal is that the district court erred in denying his motion to suppress evidence of the two weapons. He claims that the officers' sole purpose in conducting the search was to investigate further their suspicions that Walker was engaged in criminal activity. He argues that a search conducted for the

---

1. The record is unclear with respect to Horton's role in conducting the inventory. It appears that Horton was present when the trunk was opened but was not an active participant in the search.

2. The district court apparently found Walker guilty of only one count of the indictment because there was some evidence that the shotgun belonged to Corales.

sole purpose of investigating suspected criminal activity does not fall under the inventory exception to the requirement that police obtain a search warrant. *See United States v. Arango–Correa*, 851 F.2d 54, 59 (2d Cir.1988). Because the search was not conducted as part of a valid inventory, Walker contends, the evidence must be suppressed because the officers lacked probable cause to search the vehicle without a warrant.

"[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987). This exception serves two principal purposes: " 'An inventory of an automobile's contents protects the owner's personal property while it is in police custody, and reciprocally protects the police against unfounded claims of lost, stolen, or damaged property.' " *United States v. Hahn*, 922 F.2d 243, 246 (5th Cir.1991) (quoting *United States v. Judge*, 864 F.2d 1144, 1144–45 (5th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1946, 109 L.Ed.2d 309 (1990)).

Nevertheless, an inventory search cannot be " 'a ruse for a general rummaging in order to discover incriminating evidence.' " *Id.* (quoting *Florida v. Wells*, —— U.S. ——, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990)). In order to prevent inventory searches from concealing such unguided rummaging, Supreme Court has dictated that " '[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.' " *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 2610–11, 77 L.Ed.2d 65 (1983) (quoting *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 2863, 69 L.Ed.2d 768 (1981)). Accordingly, the Supreme Court's "decisions have always adhered to the requirement that inventories be con-

ducted according to standardized criteria." *Bertine*, 107 S.Ct. at 742 n. 6.

■ The district court found that the Pecos police department had an established, unwritten, standardized inventory policy, and that Horton, Marquez, Longoria and Montgomery were familiar with it. The policy requires that the contents of the vehicle be inventoried at the site of arrest, unless there are too many items, in which case the inventory is completed at the police station. The court found that the officers had adhered to these standardized procedures and that they conducted the search pursuant thereto and in good faith and for a caretaking purpose.

"In reviewing the district court's ruling on a motion to suppress based on testimony at a suppression hearing, we must accept the district court's factual findings unless they are clearly erroneous or are influenced by an incorrect view of the law. We must also view the evidence in the light most favorable to the party that prevailed below." *United States v. Simmons*, 918 F.2d 476, 479 (5th Cir.1990) (citation omitted).

The record provides ample support for the district court's factual findings. Horton, Marquez, Longoria and Montgomery all testified that the Pecos police department had an established but unwritten inventory policy with respect to automobiles driven by an individual when arrested. They stated that the purpose of the policy was to protect the property of the owner and to reduce the potential liability of the police department. Horton, Marquez and Montgomery specifically testified that it was department policy to inventory an automobile's contents at the site of the arrest, unless there were too many items to do so. Marquez and Longoria specifically stated that their purpose in searching the trunk of the vehicle was to conform to the police department's inventory procedure.[3]

---

**3.** The government contends that even if the officer's motivation in searching the trunk was investigative and not procedural, the legality of the search is insulated by the fact that the search was conducted in accordance with an established inventory policy. Because we affirm the district court's finding that the officers searched the vehicle for the purpose of conforming to the inventory policy, it is not necessary to address this question.

We find that the defendant has failed to demonstrate that the district court's factual findings with respect to the officers' motives in conducting the inventory are clearly erroneous. The inventory was prompted by a legal arrest and carried out in accordance with an established police department inventory policy. It is not required that this policy be written. *United States v. Frank,* 864 F.2d 992, 1002–03 (3d Cir.1988), *cert. denied,* 490 U.S. 1095, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989); *United States v. Feldman,* 788 F.2d 544, 551–53 (9th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). We therefore conclude that the district court did not err in denying Walker's motion to suppress the evidence of the two firearms.

Walker further contends that the inventory was illegal because the officers could have given Corales custody of the vehicle instead of conducting the search. With respect to this point of error, it is unclear if Walker contends that the officers violated their standard inventory procedure—based on Montgomery's testimony that it is standard procedure not to inventory a vehicle when the owner has designated another person to take custody—or if he contends that the police have an affirmative obligation to pursue the least intrusive means available in conducting the inventory.

In either event, Walker's claims are meritless. He testified that his father was the owner of the vehicle, and there is no indication that Walker (or his father) designated that Corales or anyone else take custody of the vehicle (or that his father was at or near the scene). Additionally, "police are not required to provide defendants with an opportunity to make alternative arrangements for the safekeeping of their property." *United States v. Johnson,* 815 F.2d 309, 314 (5th Cir.1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988). The Supreme Court has stated that " 'reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reason-able rules requiring a different procedure.' " *Id.* (quoting *Bertine,* 107 S.Ct. at 742). Police are not required to deviate from their standardized procedures on an *ad hoc* basis for the convenience of suspects.

Finally, Walker appears to contend that the officers would have been denied a warrant to search the vehicle had they sought to obtain one and that the search therefore was illegal, regardless of whether it was conducted as part of an inventory. As noted above, inventory searches are an *exception* to the warrant requirement. *Bertine,* 107 S.Ct. at 741. A search warrant is not required to validate an otherwise lawful inventory search.

### CONCLUSION

Walker has failed to demonstrate that the district court erred in finding that the officers discovered the weapons pursuant to a good faith search under a standardized inventory policy. Accordingly, Walker's conviction and sentence are

AFFIRMED.