IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 17, 2007

Charles R. Fulbruge III
Clerk

No. 06-31079

UNITED STATES OF AMERICA

Plaintiff–Appellee

v.

MICHAEL BRADY SWAN

Defendant–Appellant

Appeal from the United States District Court
for the Western District of Louisiana
No. 5:06-CR-50014

Before DEMOSS, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Michael Swan appeals his conviction and sentence on drug and weapon charges. Swan challenges the district court's order denying his motion to suppress evidence discovered in his vehicle following a traffic stop. He also contends that the district court erroneously grouped two counts for sentencing purposes. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I

Swan, a multiple felon, was indicted after a loaded Glock pistol, four hand-made explosive devices, and 196 grams of seven different drugs (mostly methamphetamine) were found during a search of his vehicle following a traffic stop. Swan ultimately entered a conditional guilty plea on three counts of a four-count indictment charging him with (1) being an armed career criminal in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (Count 1); (2) possession with intent to distribute more than 50 grams of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count 2); and (3) possession of a firearm during and in relation to a drug-trafficking offense in violation of 18 U.S.C. § 924(c)(1) (Count 3). A fourth count involving possession of unregistered grenades in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871 was dismissed based on Swan's cooperation with related investigations.

Before pleading guilty, Swan moved to suppress the drugs, gun, and explosives along with all post-arrest inculpatory statements. Swan argued that his car was illegally searched without a warrant, consent, or probable cause. He moved to suppress his post-arrest statements on the grounds that those statements (1) were fruit of the poisonous tree, (2) were not made voluntarily, and (3) were given in exchange for a promise of immunity from the armed career criminal charge (Count 1) if he cooperated. Swan did not elaborate on the latter two arguments. The Government conceded that there was no valid warrant and no consent to search Swan's vehicle but argued that the search was nevertheless valid pursuant to: (1) the automobile exigent circumstances exception; (2) a search incident to arrest following custodial arrest for traffic violations and marijuana possession; (3) probable cause; (4) the plain view exception; (5) the inventory search exception; and (6) inevitable discovery. Following an evidentiary hearing, at which a videotape recording of the traffic encounter was

admitted, the district court agreed with a magistrate judge's recommendation to deny the motion to suppress. Swan's conditional guilty plea, which preserved his right to appeal the suppression issue,[1] was entered shortly thereafter.

In the presentencing report (PSR), Count 1 (armed career criminal in possession of a firearm) was grouped with Count 2 (drug trafficking) as "closely related counts" that "involve the same victim and the same act or transaction" pursuant to sections 3D1.1(a)(1) and 3D1.2(a) of the Sentencing Guidelines.[2] Count 3 (possession of a firearm in connection with a drug trafficking offense) could not be grouped because that offense carried a mandatory five-year consecutive sentence.[3] Counts 1 and 2 each carried an adjusted offense level of 29, after a three-point acceptance-of-responsibility reduction, but because Swan was an armed career criminal, the base offense level for the grouped counts was elevated to 34 pursuant to section 4B1.4(b)(3)(A) of the Guidelines.[4] After the acceptance-of-responsibility reduction, the total offense level for the grouped counts was 31.[5] Applying a level VI criminal history category, Swan's guideline sentencing range on the grouped counts was 188-235 months.

---

[1] See FED. R. CRIM. P. 11(a)(2).

[2] U.S. SENTENCING GUIDELINES MANUAL § 3D1.2(a) (Nov. 1, 2005) ("USSG").

[3] See id. § 3D1.1(b)(1) ("Exclude from the application of §§ 3D1.2-3D1.5 [grouping rules] the following: Any count for which the statute (A) specifies a term of imprisonment to be imposed; and (B) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment.").

[4] Id. § 4B1.4(a), (b)(3)(A) ("A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal. . . . The offense level for an armed career criminal is the greatest of: . . . 34, if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence, as defined in § 4B1.2(a), or a controlled substance offense, as defined in § 4B1.2(b), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a) . . . .").

[5] See id. ("If an [acceptance-of-responsibility reduction] applies, decrease the offense level by the number of levels corresponding to that adjustment.").

In written objections to the PSR, Swan asserted that Counts 1 and 2 were improperly grouped because the sentence on Count 3 could only be imposed consecutively to Count 2, which would have an offense level of 29 if it were not grouped with the armed career criminal count. The probation officer rejected Swan's argument based on statutory language precluding the sentence on Count 3 from being imposed "concurrently with any other term of imprisonment imposed . . . ."[6]

At the sentencing hearing, the district judge overruled the grouping objection, adopted the findings and recommendations in the PSR, and sentenced Swan to concurrent sentences of 220 months in prison on Counts 1 and 2, a consecutive 60-month sentence on Count 3, five years supervised release, and a $300 fine. The district court determined that an upward departure would be warranted because the level VI criminal history category under represented the seriousness of Swan's criminal history and likelihood of recidivism. However, the court elected not to impose an upward departure, concluding that the 280-month total sentence resulting from the consecutive sentence on Count 3 was appropriate.

Swan now appeals the suppression issue and the grouping of Counts 1 and 2. As a corollary to the grouping argument, Swan also makes a perfunctory challenge to the "reasonableness" of the sentence on Count 2, arguing that 220 months for that offense is not reasonable and that the consecutive sentence on Count 3 should be appended to a reasonable sentence for Count 2. Swan does not assert on appeal that his offense levels on Counts 1 and 2 were improperly calculated or that he was entitled to any other reductions. Likewise, Swan does not assert error in the criminal history score calculation or assert that his sentence, or any of its components, exceed statutory maximums. Swan has also

---

[6] 18 U.S.C. § 924(c)(1)(D)(ii) (emphasis added).

abandoned his claims that his post-arrest statements were involuntary and that the Government breached an immunity agreement, but he continues to argue that his statements must be excluded as a product of an illegal search and seizure.

## II

On appeal from the denial of a motion to suppress, the district court's fact findings are reviewed for clear error, "giv[ing] due weight to inferences drawn from those facts by resident judges and local law enforcement officers."[7] A fact finding is clearly erroneous if the evidence, viewed in the light most favorable to the party prevailing below, leads to the "'definite and firm conviction that a mistake has been committed.'"[8] The district court's legal conclusions, including determinations of reasonable suspicion and probable cause, are reviewed de novo.[9]

Considering the evidence in the record and the parties' arguments, we have little trouble concluding that the discovery of contraband in Swan's vehicle was inevitable. As an initial matter, we conclude that the traffic stop was valid under Terry v. Ohio.[10] Under the two-prong Terry inquiry, a traffic stop is valid if it is (1) justified at its inception and (2) reasonably related in scope to the circumstances that justified the interference in the first place.[11] The District Court did not err in concluding that the traffic stop was justified at its inception

---

[7] Ornelas v. United States, 517 U.S. 690, 699 (1996).

[8] United States v. Lopez-Moreno, 420 F.3d 420, 429-30 (5th Cir. 2005) (quoting Payne v. United States, 289 F.3d 377, 381 (5th Cir. 2002)), cert. denied, 546 U.S. 1222 (2006).

[9] Ornelas, 517 U.S. at 699.

[10] 392 U.S. 1 (1968).

[11] Id. at 19-20; see also United States v. Shabazz, 993 F.2d 431, 435 (5th Cir. 1993).

by at least one traffic violation, a missing license plate.[12] That traffic violation is undisputed and evident from the videotaped encounter. Contrary to Swan's argument, the arresting officer's subjective motivations for making the stop are immaterial as long as the stop or detention is objectively justified,[13] which in this case, it plainly was.

The second prong of the Terry test is satisfied if the officer's actions after making a legitimate traffic stop were reasonably related to either the circumstances that justified the stop or to dispelling reasonable suspicion developed during the stop.[14] A Terry "'detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop,'" but if further reasonable suspicion emerges during the stop and is supported by articulable facts, detention may continue until the new reasonable suspicion has been dispelled or confirmed.[15] During this brief period of detention, the officer may examine the driver's license and vehicle registration, run a computer check on the driver and the vehicle, and question the driver about a wide range of matters, including those unrelated to the purpose of the traffic stop.[16] There is no specific prohibition on the scope of permissible questioning "so long as the overall detention is justified by reasonable suspicion."[17] Moreover, this court has eschewed any particularized limitations on the permissible investigative tools that may be utilized in connection with a Terry stop, holding that the relevant

---

[12] Shabazz, 993 F.2d at 435 ("Appellants do not argue, nor could they, that the initial stop of their vehicle for speeding was improper. This is so whether or not Terry applies.").

[13] Whren v. United States, 517 U.S. 806, 813 (1996); Lopez-Moreno, 420 F.3d at 432.

[14] Lopez-Moreno, 420 F.3d at 430-31.

[15] Id. (quoting United States v. Brigham, 382 F.3d 500, 507 (5th Cir. 2004) (en banc)).

[16] Id.

[17] Brigham, 382 F.3d at 510.

inquiry is "'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.'"[18]

The district court correctly concluded that the second prong of the Terry test was satisfied. Immediately after Swan's vehicle was stopped, Swan exited his vehicle, intercepted the arresting officer, and volunteered that he lacked insurance on the vehicle. Contemporaneously with this admission, the arresting officer discovered that Swan's documents were insufficient to establish ownership of the vehicle. Based on these circumstances, the arresting officer was required to impound the vehicle pursuant to LA. REV. STAT. ANN. § 32:863.1(C)(1)(a), which states "[i]f the operator of a motor vehicle is unable to show compliance with the provisions of [the compulsory motor vehicle liability insurance law] . . ., the motor vehicle shall be impounded."[19] At the suppression hearing, the arresting officer testified that he intended to impound the vehicle at this point, but he asked additional questions, including whether Swan had ever been arrested. Swan admitted he was on parole, and the officer verbally noted that he reeked of marijuana. The officer then approached the vehicle and initiated a search, which he characterized as a "frisk" of the vehicle for weapons prior to initiating impoundment procedures.

Swan does not contend that the length of detention was too long, and we conclude, in any event, that it was not. The entire encounter between Swan and the arresting officer lasted approximately five minutes; the initiation of the stop was justified at its inception; and the officer's subsequent actions "exemplified a graduated response to emerging facts,"[20] were reasonable under the

---

[18] Id. at 511 (quoting United States v. Sharpe, 470 U.S. 675, 686 (1985)).

[19] LA. REV. STAT. ANN. § 32:863.1(C)(1)(a) (emphasis added).

[20] Brigham, 382 F.3d at 509.

circumstances and effectuated the objectively justified purpose of the stop. Thus, both prongs of the Terry test are met.

Although Swan contends that the arresting officer had no cause to search or even approach his vehicle to conduct a visual inspection, we need not consider these arguments or the applicability of any of the other asserted exceptions to the warrant requirement because Swan's voluntary admission that he lacked insurance required that his vehicle be impounded, which would have resulted in an inventory search and, ultimately, the discovery of the drugs and weapons in the vehicle.

An inventory search is a well-established exception to the Fourth Amendment's warrant requirement,[21] but it cannot be subterfuge for criminal investigations. In order to prevent inventory searches from being used as "a ruse for a general rummaging in order to discover incriminating evidence[,] . . . inventories [must] be conducted according to standardized criteria"[22] "consistent with the proper purpose of a noninvestigative inventory search."[23] While it is true that the arresting officer in this case was not conducting an inventory search at the time the contraband was discovered, an inventory search was an inevitable consequence of Swan's failure to maintain liability insurance on his vehicle.

Swan does not dispute that his vehicle could lawfully be impounded, and he does not dispute that an inventory search could be conducted in connection therewith. Swan argues, however, that the decision to impound the vehicle was discretionary and thus required some proof regarding the police department's

---

[21] Colorado v. Bertine, 479 U.S. 367, 371 (1987).

[22] United States v. Walker, 931 F.2d 1066, 1068 (5th Cir. 1991) (quoting Florida v. Wells, 495 U.S. 1, 4 (1990) and Bertine, 479 U.S. at 374 n.6) (internal quotation marks omitted).

[23] United States v. Privett, 68 F.3d 101, 103 (5th Cir. 1995).

guidelines for exercising that discretion. Section 32:863.1(C)(1)(a) of the Louisiana Revised Statutes unambiguously states that a motor vehicle lacking proof of insurance "shall be impounded" and dictates certain procedures that must be followed in connection therewith.[24] Despite this rather clear language, Swan points out that other language in subsection (C)(1) specifies different procedures to be employed "[i]n those cases in which a motor vehicle is not impounded,"[25] and he contends that this language indicates that the term "shall" in subsection (C)(1)(a) may be fairly read as "may."

Swan failed to cite any Louisiana cases previously considering this issue, but we are unconvinced that the argument has merit. The Louisiana statute at issue specifically enumerates circumstances in which an officer has discretion not to impound a vehicle lacking liability insurance, but those circumstances are limited and do not apply in this case.[26] Although the statute is not a model of clarity, the language Swan cites more reasonably refers to those specifically enumerated situations and a plain reading of the statute does not require us to read the term "shall" in subsection (C)(1) contrary to its ordinary meaning. Were we to read the term "shall" in (C)(1) as discretionary, it would effectively obviate the other procedures that the same subsection dictates "shall" be followed when a vehicle is impounded, which is not a reasonable reading of the statute:

> [T]he motor vehicle shall be impounded and the operator shall be issued a notice of noncompliance . . . such notice may be sent by first

---

[24] LA. REV. ST. ANN. § 32:863.1(C)(1)(a).

[25] Id. (C)(1)(a); see also (C)(2).

[26] Id. (C)(7) (giving an officer discretion to issue a temporary sticker valid for three calendar days in lieu of impoundment when a passenger in the motor vehicle is under age twelve or the driver or a passenger in the motor vehicle is handicapped or when there would be a threat to public safety or to the occupants in the vehicle under the circumstances); cf. id. (G)(4) ("The only acceptable means of proof of a valid and current policy of insurance shall be one of the following: . . . The law enforcement officer making the stop has a reasonable belief that the motor vehicle is covered by a valid and current policy of liability insurance.").

class mail. A copy . . . shall be provided to the towing or storage company and . . . shall be forwarded to the office of motor vehicles within three calendar days . . . . The notice . . . shall serve as notice of administrative hearing rights. In addition, the law enforcement officer shall remove the license plate. The law enforcement officer shall deliver the vehicle license plate to the chief of the agency which employs the officer . . . .[27]

Thus, contrary to Swan's argument, the arresting officer was required to impound the vehicle, which would have resulted in an inventory search and discovery of the weapons and drugs. Therefore, the weapons and drugs were admissible under the inevitable discovery exception.[28]

To the extent Swan contends that there is no evidence concerning the procedures for conducting an inventory search, Swan is incorrect. The arresting officer testified that police department policy required the impounded vehicle to be inventoried, and the appropriate forms completed, before the vehicle could be released to the towing company. Therefore, the vehicle would have been inventoried before leaving the scene. The officer further testified that he had the necessary forms in his vehicle and that it would have been permissible to allow Swan to remove personal items before impoundment, which would have necessitated a limited inspection for weapons. Although no written policy was admitted, there is no requirement that a police department's inventory policy be written.[29] Moreover, there was no contrary evidence to suggest that the arresting officer did not follow appropriate procedures for impounding a vehicle. The district court therefore correctly determined that impoundment of the vehicle was mandatory and that discovery of the contraband was inevitable.

---

[27] Id. (C)(1)(a); cf. id. § 32:863 ("[W]hen the secretary determines that a vehicle is not covered by security [as required by law] . . ., he shall revoke the registration of the vehicle, impound, or cancel the vehicle's license plate.").

[28] See generally United States v. Lamas, 930 F.2d 1099, 1102-04 (5th Cir. 1991).

[29] Walker, 931 F.2d at 1069.

III

We do not address the merits of Swan's argument that the district court erroneously grouped Counts 1 and 2 because the argument in his appellate brief is conclusory and unsupported by any authority. Swan fails to cite or discuss the applicable grouping rules, the statutory language governing the consecutive sentence on Count 3, and any applicable case law. This argument is therefore waived.[30]

\* \* \* \*

For the foregoing reasons, Swan's CONVICTION and SENTENCE are AFFIRMED.

---

[30] See FED. R. APP. P. 28(a)(9) (requiring appellant's brief to include "the argument, which must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); United States v. Avants, 367 F.3d 433, 442 (5th Cir. 2004) (holding that failure to adequately to brief an issue on appeal constitutes waiver of that argument).