**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Kyllo Kendall PENN, Defendant–**
**Appellee.**

No. 00–30033.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 14, 2000

Filed Dec. 6, 2000

Jonathan L. Marcus, Department of Justice, Criminal Division, Washington, D.C., for the plaintiff-appellant.

Thomas K. Coan, Portland, Oregon, for the defendant-appellee.

Before: BEEZER, RYMER, and GRABER, Circuit Judges.

RYMER, Circuit Judge:

This appeal involves an inventory search of the contents of a vehicle that was being driven by Kyllo Penn without proof of insurance and that, pursuant to Portland municipal law and police department policy, had to be impounded. The Portland Police Bureau officer who conducted the search did so without telling Penn that he could first remove his personal property. The district court ruled that the search was invalid under the Fourth Amendment because the officer had discretion to allow an occupant of an impounded vehicle to take personal property from the car prior to an inventory search, and there are no standard criteria to guide a Portland officer's decision. Accordingly, the court suppressed evidence (including cocaine base) found in the car. The United States appeals, arguing that the Portland City Code requires that an inventory search be made of all property, which necessarily means that the search must take place before any property is released, and that the purposes for an inventory search adequately cabin the officers' discretion. We agree, and reverse.

## I

On April 15, 1998 Portland Police Bureau Officer McConnell stopped Penn for making a right hand turn into an inside lane in violation of Oregon Revised Statute § 811.355(1).[1] Officer McConnell requested Penn's driver's license and proof of insurance. Penn gave the officer his license, but was unable to locate proof of insurance. Using his cellular phone, Penn called the car's owner to ask about insurance, but the owner could not confirm that the car was currently insured.

Oregon law prohibits driving uninsured. Or.Rev.Stat. § 806.010. When a person is driving without insurance, Portland police officers are required by Portland Police Bureau General Order 630.60 to tow the vehicle.[2] Officer McConnell correctly impounded the car that Penn was driving and called for a tow truck. Meanwhile, McConnell became suspicious of criminal activity because of Penn's nervous demeanor, a record check showing a prior drug arrest, and Penn's evasive answer to his question whether there were any weapons in the car. He asked for consent to a pat-down search, which Penn gave. A large amount of cash was found. Penn's passenger, Latoya Carruthers, got out of the car with her purse. McConnell searched it with her consent.

McConnell then conducted an inventory search, as Portland ordinances require whenever an officer impounds a vehicle. Portland City Ordinance No. 168241.[3]

1. Section 811.355(1) states "[a] person commits the offense of making an improperly executed right turn if the person ... does not proceed as close as practicable to the right-hand curb or edge of the roadway: (a) [i]n making the approach for a right turn; and (b) [i]n making the right turn." It is not disputed that a traffic violation occurred.

2. Portland Police Bureau General Order 630.60 provides in part:

> Anytime an officer issues a citation for Driving Uninsured, THEY WILL TOW THE VEHICLE, except where the vehicle is specifically equipped for and operated by a handicapped driver or when a supervisor approves an exception where officer safety or the efficacy of a mission would be jeopardized. The tow will be requested on the ·service talk group or via MDT and the ser-

vice talk group will be informed via radio or MDT that it is a "No insurance" tow. A Portland Police Bureau Training Bulletin issued March 12, 1998 also requires a tow when the driver is uninsured:

> ... To tow for "No Insurance," cite the driver under O.R.S. 806.010 which has a bail of $170. You *must* tow the car if you cite for this ordinance and do a pink tow report.

(Emphasis in original.)

3. Portland City Ordinance No. 168241, which establishes the purposes, process, limits and timing of inventories of personal property conducted by members of the Portland Police Bureau, ordains:

> 6. When ... a City of Portland Police Officer ... takes a person into custody or impounds a vehicle, the officer must make an inventory of the property found in the pos-

During the search, Officer McConnell seized 200 grams of cocaine base (found in a brown paper bag), two cellular phones, and a pager. Two briefcases were also found. After obtaining a search warrant, the briefcases were opened and a firearm was found.

A federal grand jury indicted Penn for several crimes, including conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846, and 856(a)(2). He moved to suppress all items seized in the warrantless search of the car he was driving. The district court found that the stop was lawful and that Officer McConnell had no discretion in deciding whether to tow when the driver is cited for "No Insurance." However, following an evidentiary hearing, the court concluded that Officer McConnell exercised "unbridled discretion" in deciding not to allow Penn to take his personal property from the car prior to the inventory search. The court found that in the absence of standard procedures, Officer McConnell exercised discretion that resulted in an unreasonable and unconstitutional inventory search. Ac-

cordingly, it suppressed all evidence seized from the inventoried car.[4]

The government timely appeals.

## II.

The government argues that Portland Police Bureau officers, including Officer McConnell, follow standardized criteria in conducting inventory searches and that no matter what he may have thought, McConnell did not possess any discretion to allow Penn to remove personal property before property in the car was inventoried. In the government's view, the Portland City Code requires an inventory of all property in an impounded vehicle, and an officer is given discretion to return personal property only when tow instructions are handed to a driver before towing. These instructions provide: "With the permission of the Officer, you should take your personal property (glasses, medication, tools, etc.) with you. You will not have access to the vehicle until a release is obtained." Portland Police Bureau General Order 630.30, App. B.[5] The government points out that Penn never asked to remove any personal property. In any event, the government

session or custody of the person or inventory the property in the vehicle.

7. These inventories are necessary to:
a. locate weapons and instruments that facilitate escape;
b. locate toxic substances, flammables and explosives;
c. identify property to establish accountability and avoid spurious claims of ownership of that property;
d. assist in the prevention of theft of property and in locating and identifying stolen property; and
e. reduce the danger to persons and property.

Portland City Code § 14.10.010 (to which Ordinance No. 168241 relates) is a guide "for conducting an inventory of the personal property in an impounded vehicle...." Section 14.10.030, Inventories of Impounded Vehicles, provides:

(A) The contents of all vehicles impounded by a police officer will be inventoried. The inventory shall be conducted before constructive custody of the vehicle is released to a third-party towing company ... (exceptions omitted).

(B) The purpose for the inventory of an impounded vehicle will be to:
1. Promptly identify property to establish accountability and avoid spurious claims to property;
2. Assist in the prevention of theft of property;
3. Locate toxic, flammable or explosive substances; or
4. Reduce the danger to persons and property.

4. Penn alternatively sought to suppress the cocaine because it was in a closed container, which McConnell was precluded from opening by Portland City Code § 14.10.030(c)(3). The district court did not reach this issue in light of its decision to suppress all the evidence on constitutional grounds.

5. Portland Police Bureau Towed Vehicle Instructions also provide:

With the permission of the Officer, you should take your personal property (glasses, medication, tools, etc.) with you. Access to the vehicle is highly restricted until a release has been obtained.

submits, the search must take place before any property is released because otherwise it would defeat the purpose of an inventory search—to assure safety, protection of property, and accountability.

Penn counters that the seizure of personal property violated the bright line rule that police officers must have no discretion with regard to the scope of an inventory search. Because Officer McConnell said he had discretion here, and exercised it in favor of letting Penn's passenger take her purse, Penn contends that it was arbitrary and unreasonable not to tell him that he could take his property, too, before taking an inventory of it.

The boundaries of a permissible inventory search have been set by several decisions of the Supreme Court: *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), and *Florida v. Wells,* 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). In *Opperman,* local police conducted a routine inventory search of an automobile lawfully impounded by the police for violations of municipal parking ordinances. Rejecting a Fourth Amendment challenge to the search that uncovered marijuana in a plastic bag, the Court noted that it "has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." 428 U.S. at 373, 96 S.Ct. 3092. As the Court explained:

> When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost

or stolen property; and the protection of the police from potential danger.

*Id.* at 369, 96 S.Ct. 3092 (citations omitted).

In *Bertine,* a police officer arrested Bertine on charges of driving under the influence and inventoried the contents of his van before the arrival of a tow truck. The officer found a closed backpack in which controlled substances, cocaine paraphernalia and a large amount of cash were found. The Court held that the Fourth Amendment did not prohibit the State from using evidence discovered during the inventory. 479 U.S. at 369, 107 S.Ct. 738. It observed that the officer inventoried the van in accordance with local police procedures, which required a detailed inspection and inventory of impounded vehicles, and that knowledge of the precise nature of the property helped guard against danger as well as claims of theft. *Id.* at 370, 107 S.Ct. 738. Specifically with respect to closed containers, the Court noted that its decisions had adhered to the requirement that inventories be conducted according to standardized criteria. *Id.* at 374 n. 6, 107 S.Ct. 738. The Court stated that it was not necessary to require that police, before inventorying a container, weigh the strength of the individual's privacy interest against the possibility that the container might serve as a repository for dangerous or valuable items. *Id.* at 374–75, 107 S.Ct. 738. Finally, it declined to invalidate regulations that gave police officers discretion to choose between impounding and parking and locking a vehicle "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* at 375, 107 S.Ct. 738.

*Wells* involved another inventory search of a closed container that turned up marijuana. The Florida Supreme Court had held that the marijuana should be suppressed, as it read *Bertine* to require that police procedures must mandate either that all containers be opened or that none will be, leaving no room for discretion. Although affirming the judgment because

the Florida Highway Patrol had no policy whatsoever with respect to the opening of closed containers, the United States Supreme Court clarified that it did not mean to preclude any discretion at all; "in forbidding uncanalized discretion to police officers conducting inventory searches, there is no reason to insist that they be conducted in a totally mechanical 'all or nothing' fashion." 495 U.S. at 4, 110 S.Ct. 1632. Rather:

> A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself. Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors. The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment.

*Id.*

Here, Portland ordinances require inventories of personal property in the vehicle whenever a vehicle is impounded in order to locate weapons or flammables, identify property to establish accountability, assist in prevention of theft, and reduce danger to persons and property. Detailed instructions are provided for how inventories will be conducted, including a requirement that valuables be listed on a receipt that will be tendered to the person in control of the vehicle.[6] There is no exception for property released to the driver. On their face, Portland's policies prescribe that all personal property in an impounded vehicle be inventoried. They vest no discretion in the impounding officer. These policies only make sense, and the purposes for which inventory searches are authorized are only served, if the inventory search precedes the release of personal property.

This is how Officer McConnell proceeded in this case, except that he allowed Penn's female passenger to get out of the car with her purse. McConnell testified that he would generally allow this, although he could not say where the Code says that he was allowed to do it. He also testified that the decision whether to allow somebody to take property out of the car or require them to leave it in the car is not based on standard criteria; "that's all left up to the officer's discretion."

Although the district court interpreted this as "unbridled discretion" whether to allow an occupant to take personal property from an automobile prior to an inventory search, we read the testimony differently. McConnell was never asked about— and did not testify that—there were no

---

6. For example, § 14.10.030(C) of the Portland City Code provides:

1. An inventory of personal property and the contents of open containers will be conducted throughout the passenger and engine compartments of the vehicle including, but not limited to, accessible areas under or within the dashboard area, in any pockets in the doors or in the back of the front seat, in any console between the seats, under any floor mats and under the seats;

2. In addition to the passenger and engine compartments as described above, an inventory of personal property and the contents of open containers will also be conducted in the following locations: [describing in detail]

. . . .

3. Unless otherwise provided in this Chapter, closed containers located either within the vehicle or any of the vehicle's compartments will not be opened for inventory purposes.

4. Upon completion of the inventory, the police officer will complete a report as directed by the Chief of such officer's department.

5. Any valuables located during the inventory process will be listed on a property receipt. A copy of the property receipt will either be left in the vehicle or tendered to the person in control of the vehicle if such person is present. The valuables will be dealt with in such manner as directed by the Chief of the police officer's department.

standard criteria as to *when* to release personal property in an impounded vehicle. He was only asked whether he had such discretion. As to this, there is no question that Portland police officers have discretion whether to give permission to a driver of an impounded car to take personal property such as glasses, medication, and tools. The "Towed Vehicle Instructions" and the General Orders so provide. However, the question here is whether a Portland police officer has discretion to release property before inventorying it. As we have explained, we conclude that police and city policy is to the contrary. This remains true, regardless of whether Officer McConnell correctly or mistakenly let Carruthers get out of the car with her purse; indeed, as he testified, he did not have the Code in hand. Thus, we are firmly convinced that a Portland officer has no discretion to conduct anything other than a full and complete inventory.

Nor is there any policy that requires Portland officers to tell drivers of an impounded vehicle that the driver may ask permission to take some of the property out of the car *before* the inventory is conducted.[7] Penn points to no policy to this effect, and it would be countersensical to the mandatory inventory and receipt obligations the policies impose, as well as to the purposes for which inventories are taken. It is hard to see how the owner's property can be protected from theft, and the police and city from claims for lost or stolen property, without a full listing of all items in the car before any of it is released to anyone, with a receipt. Instead, Penn suggests that the Towed Vehicle Instructions confer discretion on the police officer to release property, without saying when, and this means that McConnell should have given him pre-inventory advice of the opportunity to take personal property out

of the car before the search is conducted. We do not see how this inference can reasonably be drawn, because the Instructions focus on allowing drivers to take personal effects such as medicine and glasses that might be needed for health before the car can be released, or tools that might be needed for work.

In sum, McConnell followed policy in conducting the inventory search and its scope, including all items of personal property in the vehicle, was not unreasonable. It did not offend the Constitution.

In this conclusion we join the Third and Fifth Circuits, whose appellate courts have made similar decisions. In *United States v. Skillern*, 947 F.2d 1268 (5th Cir.1991), *cert. denied*, 503 U.S. 949, 112 S.Ct. 1509, 117 L.Ed.2d 646 (1992), a local police officer impounded a car because the driver lacked a driver's license and proof of insurance. The officer testified that he would have allowed the driver to designate one of the licensed occupants of the car to take custody instead of impounding the car, but that the driver never asked. Skillern argued that admitting the inventoried evidence was unreasonable because the police have a duty to avoid taking the car into custody if there is an alternative. The Court of Appeals for the Fifth Circuit noted that *Bertine* explicitly rejected this argument and that the police had no Fourth Amendment obligation to offer the driver an opportunity to avoid impoundment (and thus what turned out to be an incriminating inventory search). 947 F.2d at 1275–76. By contrast, in *United States v. Frank*, 864 F.2d 992 (3d Cir.1988), *cert. denied*, 490 U.S. 1095, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989), the driver did ask officers to give the personal belongings in the car to his family before an inventory search was begun. Nevertheless, in rejecting Frank's contention that the search

---

**7.** Unlike the State of Washington, Oregon has no decisional law that requires consent of the owner of the vehicle, if present, to a routine inventory search following lawful impoundment. For this reason (as well as the fact that the owner of the vehicle being driven by Penn

was not present), our decision in *United States v. Wanless*, 882 F.2d 1459 (9th Cir.1989), which turned on a limitation to this effect placed on the search requirement by Washington state courts, is distinguishable and inapplicable.

was arbitrary and violated his privacy interests with respect to property in it, the court pointed out that only by identifying and listing the contents of the vehicle could officers identify Frank's property. 864 F.2d at 1004. Further, the court observed that, even assuming that *Bertine* requires more by way of defining the scope of a search than the simple directive to conduct an "inventory," which means "a list or schedule of property, containing a designation or description of each specific article," the requirement is satisfied by showing that an inventory is necessary to safeguard the property because that requirement "necessarily implies a detailed account, catalog or schedule." *Id.* (citations omitted).

We are satisfied that Officer McConnell was acting in accordance with City and Police policy to conduct a complete inventory, and that he had no discretion. In context, the instructions authorizing an officer to permit removal of personal property from an impounded vehicle allow the exercise of discretion only after the inventory has been completed and before the vehicle is towed. Accordingly, we hold that the inventory search was not unconstitutional and that the inventoried evidence should not have been suppressed for this reason.

However, we cannot resolve the question of whether the paper bag containing the cocaine base was wrongfully opened. The district court did not rule on the issue, nor can we because it is a fact-intensive inquiry as to which conflicting evidence was presented. We therefore leave the propriety of this search in light of Portland City Code § 14.10.030(c)(3) to the court on remand.

REVERSED AND REMANDED.