**2018 UT App 132**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ISAAC ALBERTO TIRADO,
Appellant.

Opinion
No. 20160284-CA
Filed June 28, 2018

Second District Court, Farmington Department
The Honorable Thomas L. Kay
No. 131702061

Randall W. Richards, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
GREGORY K. ORME and DAVID N. MORTENSEN concurred.

HARRIS, Judge:

¶1 Defendant Isaac Alberto Tirado was a passenger in a car that was pulled over and eventually impounded. While conducting an inventory search of the impounded vehicle, officers found four types of illegal drugs near the passenger seat: methamphetamine, heroin, marijuana, and unprescribed oxycodone. After being charged with various drug-related offenses, Defendant moved to suppress the evidence discovered during the inventory search. The district court denied that motion, and Defendant appeals. We affirm.

BACKGROUND

¶2     While on patrol one afternoon, a Layton City police officer (Officer) noticed a car with an expired registration. Officer pulled over the vehicle, which had two occupants: a driver (Driver) and Defendant, who was sitting in the front passenger seat.[1] Officer approached the vehicle and asked Driver for his license and registration, but Driver was unable to produce a current registration. Officer also asked Defendant for identification, but Defendant did not have any and instead simply gave Officer his name. Officer then returned to his patrol car to run a records check on the information he was given.

¶3     After checking Driver's information, Officer learned that the vehicle had been unregistered for nearly a year, and that Driver had an outstanding "traffic warrant" for expired registration. After receiving that information, Officer noted that, due to its expired registration, he could "technically" impound the vehicle, but Officer did not at that point decide whether he would actually do so. Officer then ran a records check on Defendant, and obtained information that led him to believe that Defendant was a "gang member and drug abuser." At that point, Officer determined that he would in fact impound the vehicle, but decided not to arrest Driver on the outstanding warrant; instead, Officer gave Driver a citation for expired registration.

¶4     The Layton City Police Department has a written policy (the Policy) that governs the manner in which its officers are to

---

1. The entire traffic stop was captured on Officer's dashboard camera, and the video recording from that camera was admitted into evidence at the first suppression hearing. We have reviewed that video recording, and some of the facts set forth herein are informed by our review of that video.

inventory the contents of the vehicles they impound. In relevant part, the Policy provides as follows:

> All property in a stored or impounded vehicle shall be inventoried and listed on the Vehicle Impound Report Form. This includes the trunk and any compartments or containers, even if closed and/or locked. Members conducting inventory searches should be as thorough and accurate as practical in preparing an itemized inventory. These inventory procedures are for the purpose of protecting an owner's property while in police custody, to provide for the safety of officers, and to protect the Department against fraudulent claims of lost, stolen or damaged property.
>
> . . . .
>
> Unless it would cause an unreasonable delay in the completion of a vehicle impound/storage or create an issue of officer safety, officers should make reasonable accommodations to permit a driver/owner to retrieve small items of value or personal need (e.g., cash, jewelry, cell phone, prescriptions) which are not considered evidence or contraband.

Officer later testified that it is "common practice" among Layton City officers to simply photograph the contents of the vehicle rather than to meticulously list each item on a written form.

¶5 After deciding to impound the vehicle, Officer asked both Driver and Defendant to exit the car, and explained his intention to tow the vehicle. By this time, a backup officer (Backup Officer) had arrived to assist. Officer told both Driver and Defendant that they were free to go and that they could call someone to pick

them up. Driver and Defendant did not immediately leave the scene, and Officer asked them if they wanted any items from the car before it was impounded. Defendant asked for a backpack. Before giving the backpack to Defendant, however, Officer searched it and found a computer, an iPad, and a cell phone inside; Officer then ran the serial numbers of the items to determine if any were stolen, and soon determined that they were not listed as stolen. Finding nothing troubling in the backpack, Officer then returned it and its contents to Defendant without logging it or photographing it.

¶6     The officers then asked Driver and Defendant whether they would be willing to consent to a search of their persons, and they agreed. The officers then searched both Driver and Defendant, and found no illegal items.

¶7     The officers then began inventorying the contents of the vehicle that was about to be impounded. Officer first located a $5 bill between the passenger seat and the console, and asked Driver and Defendant if they knew whose it was. Defendant claimed the bill as his, and Officer gave the bill to Defendant without logging it or photographing it. Officer also found a semi-transparent pill bottle labeled as amoxicillin and, after examining it but not opening it, returned that bottle to Defendant without logging it or photographing it.

¶8     Officer continued his search of the area between the passenger seat and the center console, and discovered three baggies containing a white crystalline substance that Officer believed was methamphetamine, as well as a second semi-transparent prescription pill bottle, this one with a label that bore Defendant's name and indicated a prescription for Lortab. Officer later testified that the pill bottle was transparent enough for him to see that it contained some pills as well as a small plastic bag. Officer then opened the pill bottle and saw that the plastic bag contained a "brown tar substance" which Officer

believed was heroin; the pills found inside the bottle turned out to be oxycodone, and not Lortab. Soon thereafter, and in the same general location, Officer also found a "small bag of a green leafy substance that smelled like marijuana." After discovering these items, Officer arrested Defendant.

¶9     After arresting Defendant, the officers continued with their inventory of the vehicle's contents. The officers did not include in their inventory any of the illegal drugs found in the vehicle, because those drugs were "taken into evidence." At the conclusion of the inventory, Backup Officer filled out a Vehicle Impound Report Form. However, on the form, the officers did not individually log the items found in the vehicle; instead, they opted to simply take a series of photographs depicting the contents of the vehicle, and indicated on the form that "property [was] photographed."

¶10    The State charged Defendant with various drug-related offenses, including possession of methamphetamine, heroin, oxycodone, and marijuana. Defendant moved to suppress all of the evidence discovered during the inventory search. After holding two evidentiary hearings, the district court denied Defendant's motion on two independent grounds: the search of the pill bottle was legally justified by the automobile exception to the warrant requirement, and the evidence was discovered pursuant to a lawful inventory search.

¶11    After the district court's ruling on the motion to suppress, Defendant entered a conditional guilty plea to two second-degree felonies: possession of a controlled substance with intent to distribute, and possession or use of a second controlled substance. The court dismissed the remaining charges as part of the plea agreement. Also as part of the plea, Defendant reserved his right to appeal the district court's decision to deny the

motion to suppress, which right Defendant now exercises by challenging that decision on appeal.[2]

STANDARD OF REVIEW

¶12    "We review a [district] court's decision to grant or deny a motion to suppress for an alleged Fourth Amendment violation as a mixed question of law and fact." *State v. Fuller*, 2014 UT 29, ¶ 17, 332 P.3d 937. Under this standard, "[w]hile the court's factual findings are reviewed for clear error, its legal conclusions are reviewed for correctness, including its application of law to the facts of the case." *Id.*

ANALYSIS

A

¶13    The Fourth Amendment to the United States Constitution provides the right of people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Automobiles are considered "effects" and are therefore "within the reach of the Fourth Amendment," but because of the "inherent mobility of automobiles" and because "the expectation of privacy with

---

2. With the consent of the prosecution and the approval of the judge, a defendant may enter a conditional guilty plea, while "preserv[ing] [a] suppression issue for appeal." *State v. Sery*, 758 P.2d 935, 938–40 (Utah Ct. App. 1988), *disagreed with on other grounds by State v. Pena*, 869 P.2d 932 (Utah 1994). "A defendant who prevails on appeal [after entering a conditional plea] shall be allowed to withdraw the plea." Utah R. Crim. P. 11(j).

respect to one's automobile is significantly less than that relating to one's home or office," "warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not." *See South Dakota v. Opperman*, 428 U.S. 364, 367 (1976).

¶14 One such circumstance is the "inventory search" of a vehicle (or other item of property) that is impounded by law enforcement officers. Such a search "constitutes an exception to the warrant requirement," and is justified by concerns about "protecting the police and public from danger, avoiding police liability for lost or stolen property, and protecting the owner's property." *See State v. Hygh*, 711 P.2d 264, 267 (Utah 1985); *accord Opperman*, 428 U.S. at 369. For all of these reasons, officers are permitted to ascertain and log the contents of property (including vehicles) that they impound.

¶15 To be lawful, an inventory search must meet two requirements. First, there must be "reasonable and proper justification for the impoundment of the vehicle." *Hygh*, 711 P.2d at 268. Such justification can be drawn from either "explicit statutory authorization or by the circumstances surrounding the initial stop." *Id.* Second, there must be "'an established reasonable procedure for safeguarding impounded vehicles and their contents,'" and the State must show that "'the challenged police activity was essentially in conformance with that procedure.'" *Id.* at 269 (quoting 2 LaFave, *Search & Seizure* § 7.4, at 576–77 (1978)); *see also Opperman*, 428 U.S. at 372 (stating that "inventories pursuant to standard police procedures are reasonable").

¶16 Inventory searches, however, may not be used as a "pretext" for warrantless investigatory searches. If the police are acting "in bad faith or for the sole purpose of investigation," an inventory search violates the Fourth Amendment. *See Colorado v. Bertine*, 479 U.S. 367, 372 (1987); *see also Florida v. Wells*, 495 U.S.

1, 4 (1990) (stating that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence"). While our supreme court has eliminated the "pretext" doctrine in the context of traffic stops, *see State v. Lopez*, 873 P.2d 1127, 1140 (Utah 1994) (stating that "as applied to traffic stops, we reject the pretext stop doctrine"), pretext remains a relevant concept in assessing the validity of inventory searches, *see id.* at 1138 (stating that the court's decision "should not be interpreted to mean that evidence of an officer's subjective intent or departure from standard police practice is never relevant to the determination of Fourth Amendment claims," and citing the inventory search context as one example of pretext's continuing relevance).

¶17 However, the pretext doctrine's application in the inventory search context is not so broad as to invalidate an otherwise-completely-lawful inventory search, merely because the officer expected to discover contraband. If the requirements of a lawful inventory search are met, the search is constitutional "despite an officer's subjective desire to uncover criminal evidence." *Linin v. Neff*, No. 2:15-cv-298-JNP-PMW, 2017 WL 3972982, at *11 (D. Utah Sept. 7, 2017) (quotation simplified), *appeal docketed*, No. 17-4158 (10th Cir. Oct. 10, 2017); *see also United States v. Lewis*, 3 F.3d 252, 254 (8th Cir. 1993) (per curiam) ("Having conducted the search of [the defendant's] van according to standardized inventory procedures, the officers' coexistent suspicions that incriminating evidence might be discovered did not invalidate their lawful inventory search."); *United States v. Roberson*, 897 F.2d 1092, 1096 (11th Cir. 1990) (explaining that the Eleventh Circuit has held that "the mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search" (quotation simplified)); *United States v. Judge*, 864 F.2d 1144, 1147 n.5 (5th Cir. 1989) (acknowledging that "[w]hile there are undoubtedly mixed motives in the vast majority of inventory searches, the constitution does not require

and our human limitations do not allow us to peer into a police officer's 'heart of hearts'"); *United States v. Frank*, 864 F.2d 992, 1001–02 (3d Cir. 1988) (holding that even though a detective knew he "lacked probable cause to obtain a search warrant" and was aware of the defendant's "fugitive status," the "mere fact that an inventory search may also have had an investigatory purpose does not . . . invalidate it").

¶18    In performing an inventory search, an officer may open and inventory the contents of any containers (e.g., glove compartments, boxes, backpacks, pill bottles) that remain with the impounded automobile, provided that the police department of which the officer is a part has a standardized procedure regarding the opening of containers, and the officer substantially follows it. *See Bertine*, 479 U.S. at 368–76; *see also id.* at 376 (Blackmun, J., concurring) (stating that "police officers may open closed containers while conducting a routine inventory search" if they are following "standardized police procedures," and that "[t]his absence of discretion ensures that inventory searches will not be used as a purposeful and general means of discovering evidence of crime"); *State v. Shamblin*, 763 P.2d 425, 428 (Utah Ct. App. 1988) ("With a standardized, mandatory procedure, the minister's picnic basket and grandma's knitting bag are opened and inventoried right along with the biker's tool box . . . .").

B

¶19    Applying these principles to the facts of this case, we conclude that the officers executed a lawful inventory search of Driver's vehicle, and that the district court did not err by denying Defendant's motion to suppress.[3]

---

3. The State raises a number of other arguments on appeal, including an argument that the search was permissible pursuant

(continued…)

¶20 The first requirement for a lawful inventory search—that Officer had a "reasonable and proper justification" for impounding the vehicle, *see Hygh*, 711 P.2d at 268—is met here. Indeed, Defendant makes no argument that Officer lacked a legal basis to impound the vehicle. The vehicle had no current registration, and had not been current for nearly a year. Officer therefore had discretion to impound the vehicle.

¶21 Defendant vigorously argues, however, that the second requirement—substantial compliance with the Policy—is not met here. Defendant argues that Officer failed to follow the Policy in several particulars. First, Defendant points out that, on the Vehicle Impound Report Form, the officers did not separately list the items found in the vehicle; instead, the officers photographed the items and simply stated, on the form, that "property [was] photographed." Second, Defendant argues that Officer should not have opened and searched his backpack before giving it back to him. Third, Defendant argues that Officer should not have opened Defendant's second prescription pill bottle, and instead should have given it to Defendant. We find these arguments unpersuasive.

¶22 First, at the end of the inventory search, Backup Officer filled out a Vehicle Impound Report Form. Defendant correctly points out that the officers did not individually describe and log each individual item on that form. Defendant notes that the Policy requires all property found in an impounded vehicle to be "inventoried and listed" on the report form, and asserts that the officers' actions in photographing the property instead of

_____

(…continued)
to the "automobile exception" to the warrant requirement. Because we resolve this appeal by concluding that the officers conducted a lawful inventory search of the vehicle, we need not reach the State's alternative arguments.

individually listing each item in written form was a material violation of the terms of the Policy. We disagree. Police officers do not necessarily need to achieve strict compliance with the terms of the applicable inventory search policy; rather, they need only be "essentially in conformance" with its terms. *Hygh*, 711 P.2d at 269 (quotation simplified). Photographing the property is, in essence, just another way of documenting it; one might even characterize a series of photographs as a pictorial "list" of the property. Defendant does not argue here that the manner in which the officers photographed the property was deficient, or that the officers' photographs do not constitute a complete depiction of the property contained in the vehicle after impound.[4] We are satisfied that taking a thorough series of photographs of all property contained in an impounded vehicle

---

4. Defendant does argue that the officers failed to include the seized drugs in their photographic inventory. However, since that property was not going to remain with the vehicle after impound and, instead, was seized and taken to the evidence room for safekeeping, it did not need to be included in the inventory report form. For this same reason, the officers did not need to inventory and log the backpack, $5 bill, and amoxicillin bottle, since those items were not going to remain with the vehicle after impound. Given that inventory searches exist to "protect[] the police and public from danger, avoid[] police liability for lost or stolen property, and protect[] the owner's property," *see State v. Hygh*, 711 P.2d 264, 267 (Utah 1985), it is not necessary for officers to inventory and log property that does not remain with the vehicle after impound, *see, e.g., People v. Blair*, 846 N.Y.S.2d 847, 848 (N.Y. App. Div. 2007) (stating that "the objectives of an inventory search were met" where the officers "catalogued the items remaining in the vehicle" but did not catalogue certain items returned to the owner prior to impound).

constitutes substantial compliance with a policy that requires such property to be "inventoried and listed."

¶23     Second, because the backpack was not going to remain with the vehicle after impound, it did not need to be inventoried, and therefore Officer's search of the backpack was not part of the inventory search. Even if we assume, without deciding, that Officer's search of the backpack was unlawful, Officer's actions in searching the backpack did not impact the validity of the actual inventory search. If the officers had found contraband inside the backpack, Defendant may have been able to argue for suppression of that evidence,[5] but the officers found nothing illegal inside the backpack, and the contents of the backpack form no part of the State's prosecution of Defendant in this case. We consider Officer's search of the backpack to be a separate issue, one that is essentially irrelevant to the validity of the officers' inventory search of the vehicle. Any infirmities in the search of the backpack have nothing to do with lack of compliance with the terms of the Policy, at least as concerns the inventory search itself.

¶24     Third, Officer's actions in opening the semi-transparent prescription pill bottle with Defendant's name on it were in compliance with the Policy, which instructs officers to open and inventory the contents of "the trunk and any compartments or

_____

5. We express no opinion here regarding whether any such argument would have succeeded. However, we note that our supreme court has, on at least one occasion, sanctioned the search of a backpack and a purse that were returned to the driver and the passenger before the vehicle was impounded. *See State v. Cole*, 674 P.2d 119, 126 (Utah 1983) (affirming the denial of a motion to suppress evidence found in a backpack and a purse that officers had at one point returned to their owners but later demanded to search as part of an inventory search).

containers" that are to remain with the vehicle, "even if closed and/or locked." As noted above, it is well-established that officers conducting inventory searches of impounded vehicles may open containers found inside the vehicle, as long as they do so pursuant to a standardized policy regarding containers. *See Bertine*, 479 U.S. at 368–76. A pill bottle is a container, and Officer's actions in opening the pill bottle were in compliance with the Policy.

¶25 Defendant, however, takes issue with Officer's decision to open the second pill bottle but not the first—the one with the amoxicillin label. We do not view Officer's actions as inconsistent with the Policy. As noted, the Policy encourages officers to "make reasonable accommodations" in giving specific small items of "personal need," specifically including "prescriptions," back to the driver or owner prior to impoundment. By giving the amoxicillin back to Defendant before impoundment, Officer was acting in a manner that was consistent with the Policy.

¶26 With regard to the second pill bottle, Officer testified that he could see that it contained pills as well as a small plastic bag. At that point, Officer determined to open the second bottle. This too is in compliance with the Policy, which authorizes the return of personal items to their owners prior to impoundment only if the items "are not considered evidence or contraband." After looking at the semi-transparent bottle and ascertaining that it contained a plastic bag in addition to pills, Officer suspected that the container might contain contraband. Officer's decision to decline to give the bottle back to Defendant was in accordance with the Policy, as was Officer's next decision—made as soon as he determined not to return the bottle to Defendant—to open the container.

¶27 Finally, Defendant makes a general argument that the inventory search of Driver's vehicle was simply a pretext for an

investigatory search—a search that Officer wished to conduct based on his suspicions about Defendant's previous involvement with drugs. Defendant correctly points out that Officer developed such suspicions after running Defendant's name through a police database, and Defendant also correctly notes that there is some evidence in this case that Officer may not have impounded Driver's vehicle in the absence of those suspicions.[6] However, as noted, the fact that an officer has "coexistent suspicions that incriminating evidence might be discovered" does not invalidate an otherwise-lawful inventory search. *See Lewis*, 3 F.3d at 254. As in *Judge*, "[i]t would be disingenuous of us to pretend" that, when the officers began their search of Driver's vehicle, "they weren't hoping to find [some] evidence to use against" Driver or Defendant. *See Judge*, 864 F.2d at 1147 n.5. However, such "mixed motives" are present "in the vast majority of inventory searches," *id.*, and such mixed motives do not operate to invalidate an inventory search that otherwise meets the constitutional requirements. Here, there is no dispute that Officer had a legitimate reason to impound the vehicle, and we are satisfied that the officers acted in at least substantial compliance with the Policy. Because these requirements are met, the fact that the officers may have also suspected that they might find contraband inside the vehicle does not invalidate the search.

¶28    Affirmed.

_____

6. For instance, at one point prior to running a records check on Defendant, Officer mused that "[t]echnically I could tow his vehicle today" based on the expired registration, but stated that "I don't know if I will or not." However, after the records check revealed information that led Officer to believe that Defendant was a "gang member" and "drug abuser," Officer became more interested in searching and/or impounding the vehicle, eventually stating that "I'm gonna tow the car."