**2025 UT App 194**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
BYRON FRED LEATHAM,
Appellant.

Opinion
No. 20230824-CA
Filed December 26, 2025

Sixth District Court, Richfield Department
The Honorable Marvin D. Bagley
No. 211600077

Emily Adams and Melissa Jo Townsend,
Attorneys for Appellant

Derek E. Brown and Connor Nelson,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

MORTENSEN, Judge:

¶1　A driver was stopped by officers and found to lack both a valid driver license and insurance on the vehicle. The car was impounded. The driver's passenger, Byron Fred Leatham, attempted to remove an item from the vehicle before an inventory of the vehicle was completed, but the police officers would not allow it. A small bag, subsequently identified as Leatham's, was found to contain drugs, and Leatham was later charged with drug crimes. The district court denied a motion to suppress based on alleged infirmities of the search. Now Leatham appeals the denial of that motion. We affirm.

BACKGROUND

¶2      One night in March 2021, police officers from the Sevier County Sheriff's Office (the Department) pulled over a car—in which Leatham was the passenger—because its rear license plate was not illuminated. The driver and Leatham said that they were on their way to see a friend, but they didn't know the friend's name or address, indicating instead that they were following an acquaintance and were going to rendezvous at a gas station.

¶3      The officers ran the car's and driver's information and discovered that the driver did not have a valid driver license and lacked insurance on the car. The driver told the officers that he had a gun stowed in the driver side door pocket, which one of the officers retrieved after the driver exited the vehicle. An officer informed the driver that the car would be impounded and its contents inventoried, telling him, "We'll inventory it and then we'll . . . release the items to you."

¶4      The driver then told Leatham that the police were going to impound the car. As Leatham was getting out of the car, he reached back to retrieve an item near him, muttering, "Let me grab my stuff." But an officer told him, "Just leave it right there for now because we already pulled one weapon out of the car and I don't want to be surprised with a second." Leatham assured the officer that there was no weapon, but he complied and exited the car without the item.

¶5      Leatham tried to retrieve the item two more times. A few minutes after exiting the car, Leatham asked, "Can I get my bag and my cigarettes?" The officer responded, "Yeah, just a minute. Just want to make sure that [we're] gonna be impounding it." After confirming that the car was going to be impounded, the officer began to inventory the items in the car. As the officer did so, Leatham attempted to reach in the passenger side of the car, but the officer told him to "hold on."

¶6 During the inventory, an officer found a bag on the front floor of the passenger side. It was open, small, and black—resembling a toiletry bag—and contained $1,024 in cash, three baggies with a crystalline substance that later tested positive for methamphetamine, a small scale, a glass pipe, a baggie that contained a green leafy substance, and a medication bottle bearing Leatham's name.

¶7 After the inventory, the officers arrested Leatham and finished impounding the vehicle. Leatham was charged with one count of possession with the intent to distribute a controlled substance and one count of possession of drug paraphernalia.

¶8 Leatham moved to suppress the evidence obtained in the inventory of his bag. He argued that his bag did not need to be inventoried because it was not going to be left in the car upon impound. Given the officers' asserted knowledge that the bag belonged to Leatham and would not be left in the car, Leatham argued that the "inventorying of [his] bag was illegal" and that it "was conducted in violation of the Fourth Amendment." Accordingly, he argued that all evidence found in the inventory of his personal items should be suppressed. The State opposed the motion, asserting that the officers had adhered to the Department's policy regarding inventory and impoundment of vehicles that cannot be legally driven. The State argued that upon concluding that the driver "was unable to legally operate the vehicle," the officers followed the proper "procedure and policy for the safeguarding and impounding of the vehicle and the contents" and that the discovery of the drugs occurred during the execution of a lawful inventory. The State submitted a bodycam video of one of the officers who inventoried the car, and the officer stated in the video that he was required "to inventory everything that's in" the car. Yet no party placed a copy of the Department's policy into evidence.

¶9     The district court denied Leatham's motion. It found that the Department's "policy when an owner or driver of an automobile does not possess a valid driver's license is to inventory and impound the vehicle" and that the officers "conducted an inventory of the vehicle, including [Leatham's] bag that he was instructed to leave in the vehicle." Reasoning that "the officers had no duty to allow [the driver or Leatham] to remove any articles from the impounded vehicle," the court concluded that the inventory was properly conducted and that no search warrant was required under the circumstances.

¶10    Leatham entered a conditional guilty plea to one count of possession of a controlled substance, reserving his right to appeal the denial of his motion to suppress.[1] He timely appeals.

ISSUE AND STANDARD OF REVIEW

¶11    The sole issue on appeal is whether the district court erred in denying Leatham's motion to suppress evidence obtained from the search of his bag. We review a district court's decision to deny a motion to suppress as a mixed question of law and fact. *State v. Williamson*, 2024 UT App 141, ¶ 25, 558 P.3d 143, *cert. denied*, 568 P.3d 263 (Utah 2025). "While the court's factual findings are reviewed for clear error, its legal conclusions are reviewed for correctness, including its application of law to the facts of the case." *Id.* (cleaned up).

---

1. The Utah Rules of Criminal Procedure provides that "a defendant may enter a conditional plea of guilty" while reserving the right on appeal to challenge the denial of a pre-trial motion. Utah R. Crim. P. 11(j). In this circumstance, a "defendant who prevails on appeal will be allowed to withdraw the plea." *Id.*

ANALYSIS

¶12    As has long been recognized, an "inventory search of an automobile is a well-defined exception to the warrant requirement of the Fourth Amendment." *State v. Johnson*, 745 P.2d 452, 454 (Utah 1987). The exception exists because an inventory search is "not conducted to investigate criminal activity and no variant of individualized suspicion is necessary to permit one." *State v. Strickling*, 844 P.2d 979, 986 (Utah Ct. App. 1992). Thus, "when vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) (cleaned up); *see also State v. Shamblin*, 763 P.2d 425, 426 (Utah Ct. App. 1988) (reciting the same three functions of an inventory search). "These caretaking functions, when balanced against the citizen's interest in the privacy of automobile contents, justify inventory searches of impounded vehicles when performed in accordance with standardized procedures." *Strickling*, 844 P.2d at 986. "Accordingly, the Fourth Amendment is not violated if the police conduct an inventory search of a properly impounded vehicle in good faith following reasonable, standardized procedures." *Shamblin*, 763 P.2d at 426 (footnote omitted). Thus, "to be lawful, an inventory search must meet two requirements. First, there must be reasonable and proper justification for the impoundment of the vehicle. . . . Second, there must be an established reasonable procedure for safeguarding impounded vehicles and their contents, and the State must show that the challenged police activity was essentially in conformance with that procedure." *State v. Tirado*, 2018 UT App 132, ¶ 15, 428 P.3d 70 (cleaned up).

¶13    As to the first requirement, Leatham "concedes that the officers were justified in performing an inventory search" of the car. But he argues that the search fell short on the second requirement because "the inventory search should not have extended to his personal property that was inside the car—i.e., that in searching his bag, the officers exceeded the scope of the inventory-search exception." He contends that the "caretaking functions," *see Strickling*, 844 P.2d at 986, meant to ensure the proper care of the property and protect police officers are "limited to items that will remain in the car after impound." Since "personal belongings (like cell phones, wallets, medication, jackets, and even bags) need not remain in a car while it is impounded," Leatham argues that "they fall outside the police's 'caretaking' and thus need not be inventoried." Along this line, he asserts that the State did not present evidence of the Department's policy on impound inventories, specifically complaining that there was no evidence that a policy required "a *passenger's* bags to be searched as part of the inventory process."

¶14    As to the presence of a policy, the State concedes that it had "the burden of introducing evidence that such a standardized, reasonable procedure exists and that the challenged police activity was essentially in conformance with that procedure." *State v. Giron*, 943 P.2d 1114, 1117 (Utah Ct. App. 1997) (cleaned up). But in carrying this burden, the State is not required to "submit written procedures" to show that its "agents acted in accordance with standardized procedures when performing an inventory search of an impounded automobile." *Strickling*, 844 P.2d at 989. Indeed, evidence such as an officer's testimony about "normal departmental practice" and "procedures," even when "admittedly thin," is "probative of standardized policies." *Id.* at 990. And here, the State met that burden. In response to Leatham's motion to suppress, the State produced an officer's bodycam video in which the officer stated that he was required "to inventory everything that's in" the car, presumably including

personal belongings found in the car. As Leatham acknowledges, the district court found that the "Sevier County Sheriff's policy when an owner or driver of an automobile does not possess a valid driver's license is to inventory and impound the vehicle." Leatham has not challenged the finding that the policy required an unqualified inventory of "the vehicle," and we "must accept . . . as true" any factual finding that is "not properly challenged" by an appellant or is not clearly erroneous. *State v. Applegate*, 2008 UT 63, ¶ 19, 194 P.3d 925. As far as the scope of the policy extending to passenger belongings, without a copy of the actual policy included in evidence, there is simply no way for Leatham to support his claim that officers exceeded the scope of the policy by not allowing him to retrieve his bag when he was informed that the car was going to be impounded. *See Strickling*, 844 P.2d at 990 (concluding that "the district court's findings that there were standardized procedures, and that the inventory was conducted according to those standardized procedures," based on an officer's testimony of departmental procedures "were not clearly erroneous").

¶15 When a department has a policy generally providing for the inventorying of impounded vehicles, absent an express provision in the policy allowing the removal of personal items prior to an impound, officers are under no obligation to allow passengers to remove personal items. And this is for good reason. As discussed, the caretaking functions arising from a vehicle impound address three distinct needs: (1) to protect "the owner's property while [the impounded vehicle] remains in police custody," (2) to protect "police against claims or disputes over lost or stolen property," and (3) to protect "police from potential danger." *Opperman*, 428 U.S. at 369. These needs are furthered by allowing officers to inventory personal items found in impounded vehicles. "Indeed, if [a defendant] were free to remove [a] backpack before the search and the backpack proved to belong to the vehicle's absent owner rather than [the

defendant], the police would be subject to the very kind of claim against which the inventory search doctrine is designed to protect." *State v. Weaver*, 2008 UT App 101U, para. 4. Accordingly, "it would be countersensical to allow an individual to remove . . . personal belongings from a vehicle that is the subject of an inventory search before the search occurs, especially in circumstances where, as here, the individual has no ownership or verifiable possessory interest in the vehicle." *Id.* (cleaned up); *see also United States v. Penn*, 233 F.3d 1111, 1116 (9th Cir. 2000) ("It is hard to see how the owner's property can be protected from theft, and the police and city from claims for lost or stolen property, without a full listing of all items in the car before any of it is released to anyone, with a receipt.").

¶16 Several cases provide insight into the issue of occupants being allowed to remove items before an impound inventory. In *State v. Tirado*, 2018 UT App 132, 428 P.3d 70, a case involving an impound inventory, a backpack was not going to remain in an impounded vehicle. The police department in that case had a policy stating that "officers should make reasonable accommodations to permit a driver/owner to retrieve small items of value or personal need (e.g., cash, jewelry, cell phone, prescriptions) which are not considered evidence or contraband." *Id.* ¶ 4. Apparently following this policy, the officer asked the passenger if there were any items he wanted from the car before it was impounded, and the passenger asked for the backpack. *Id.* ¶ 5. The officer searched it, found nothing troubling, and handed it over to the defendant, all without logging or photographing it. *Id.* But as the officers continued to inventory the remaining contents of the car, they discovered other items that led to the arrest of the passenger for various drug-related offenses. *Id.* ¶¶ 8–10. On appeal, the passenger argued, among other things, that the officer should not have searched the backpack before giving it back to him. *Id.* ¶ 21. And in dicta, this court suggested that "because the backpack was not going to remain with the vehicle

after impound, it did not need to be inventoried, and therefore [the officer's] search of the backpack was not part of the inventory search." *Id.* ¶ 23. Assuming for purposes of the argument that the search of the backpack had been unlawful, we nevertheless concluded that the search of the backpack did not "impact the validity of the actual inventory search." *Id.* However, we noted that if "the officers had found contraband inside the backpack, [the passenger] may have been able to argue for suppression of that evidence." *Id.* On appeal, Leatham argues that his bag should not have been searched because—like the situation alluded to in the *Tirado* dicta—the item was not going to remain in the vehicle and did not need to be inventoried. Leatham misreads *Tirado*. There, the backpack was never going to remain with the vehicle. Instead, the backpack was going to be given to the passenger from the start, but the officer searched it anyway. *Id.* ¶¶ 4–5. That milieu of circumstances is not in play here, where there is no indication that the Department's policy had a provision excluding personal items from the inventory.

¶17 Our supreme court touched upon this general issue in *State v. Cole*, 674 P.2d 119 (Utah 1983). There, police officers allowed the driver to take some items out of a truck before conducting an impound inventory. *Id.* at 122. The driver removed some clothing and personal items and handed them to his passenger. *Id.* But an officer spotted a pistol case "half concealed" in the clothing the driver was removing. *Id.* It turned out to have a loaded 9mm pistol in it. *Id.* The driver was then arrested for being a felon in possession of a firearm and for possession of marijuana seeds found during the inventory. *Id.* At this point, an officer retrieved a knapsack and a purse that the driver had handed to the passenger. *Id.* When these items were inventoried, the officers found a variety of illegal drugs. *Id.* After being charged, the driver moved to suppress all the evidence seized prior to and after his arrest, and the district court denied the motion. *Id.* The driver appealed, asserting, among other arguments, that "there was no

justification for repossession of his personal belongings" from the passenger. *Id.* at 126. The supreme court disagreed, concluding, "The officers, of course, had no duty to allow [the driver] to remove any articles from the impounded vehicle. The fact that they changed their minds after [the driver's] suspicious behavior and arrest and refused to let [the passenger] remove [the driver's] alleged property from the scene reflects proper police practice under the circumstances." *Id.*

¶18　So too here. The officers were under no obligation to release to Leatham any items he wanted to take from the car. As the State points out on appeal, a categorical rule requiring police to allow passengers to retrieve personal items pre-inventory "would swallow the inventory exception whole." Indeed, if "passengers could take items out of an impounded car before an inventory, a passenger could claim to own everything in a car and remove everything before an inventory took place." A practice of allowing a passenger to remove items based on the passenger's word alone would obviously expose the police to liability if the items were later discovered to belong to someone else. Deprived of conducting a proper inventory because items in the car were released pre-inventory, the officers would have no ability to refute claims that the items were mishandled.[2]

---

2. Leatham relies on caselaw from Oregon to support his contention that the police must give vehicle occupants the opportunity to remove personal items before an impound inventory. *See State v. Fulmer*, 460 P.3d 486, 493 (Or. 2020) (concluding that an inventory conducted without notice that an occupant "may remove readily retrievable items" violates the Oregon Constitution); *see also State v. Schmidt*, 464 P.3d 481, 483 (Or. Ct. App. 2020) (relying on *Fulmer* to hold that the Oregon Constitution requires an "officer to 'allow' people to remove their personal property from an impounded vehicle"); *State v. Bernabo*,

(continued…)

¶19 Leatham resists this conclusion by attempting to transform the object of an impound inventory from the *vehicle* to the *occupants*. This shift in perspective represents a fundamental misunderstanding of an impound inventory. The point of an impound inventory is to identify and catalogue those items that are present in the vehicle when the State takes control of it—to protect the property in the vehicle, to shield state actors from liability for mishandling the property, and to ensure the safety of police officers. It would be at least somewhat at odds with these three purposes if a prerequisite of the inventory involved the driver or passengers taking whatever they wanted from the vehicle before the inventory was conducted. For these reasons, nothing in the Fourth Amendment prevents a police department from enacting an inventory policy that forbids removal of personal items from the car pre-inventory. And this also means that absent some provision in a policy to the contrary, we assume that inventory policies implicitly forbid removal of personal items from a vehicle pre-inventory. What Leatham has essentially done is challenge the constitutionality of a vehicle inventory by making it about who the items belong to rather than the fact that the items are in the vehicle. But Leatham cannot prevail on his claim by redefining a vehicle inventory (namely, an accounting of items in a vehicle at the time of impound) into something it isn't (namely,

---

197 P.3d 610, 613–14 (Or. Ct. App. 2008) (explaining that under the county's policies and procedures, an occupant must be provided the opportunity to remove any valuables before an inventory). Our research indicates that the same is true in Iowa. *See State v. Ingram*, 914 N.W.2d 794, 820 (Iowa 2018) (stating that under the Iowa Constitution, "the police should advise the owner or operator of the options to impoundment" and that "personal items may be retrieved from the vehicle"). But these cases were decided under *state* constitutional provisions, and therefore this extra-jurisdictional law is of no help to Leatham because he has raised only a federal constitutional claim.

a warrantless search of personal property). Such linguistic maneuvering simply will not stand as a basis to challenge the legitimacy of including all items in a vehicle as the proper object of impound inventory.

¶20   In sum, the car was subject to impound and inventory because the driver lacked a valid license. In conducting the inventory, the officers were under no obligation—pursuant to either the Department's policy or pursuant to the United States Constitution—to release any item in the car prior to conducting the inventory. Accordingly, the officers properly inventoried Leatham's bag along with everything else in the car, leading to the lawful discovery of the drugs and paraphernalia belonging to Leatham.

CONCLUSION

¶21   The district court properly denied Leatham's motion to suppress the evidence gathered in the impound inventory.

¶22   Affirmed.

_____